IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DVI, INC., et al., | ) | Case No. 03-12656 (MFW) |
| | ) | |
|     Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DENNIS J. BUCKLEY, Trustee of the | ) | Adv. No. 08-50248 (MFW) |
| DVI LIQUIDATING TRUST on behalf of | ) | |
| DVI, INC., et al., | ) | |
| | ) | |
|         Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| MERRILL LYNCH & CO., INC.; MERRILL | ) | |
| LYNCH MORTGAGE CAPITAL INC.; DVI | ) | |
| RECEIVABLES COR. XV; and DVI | ) | |
| RECEIVABLES XV, LLC, | ) | |
| | ) | |
|         Defendants. | ) | |

**MEMORANDUM OPINION**[1]

This matter is before the Court on the Defendants' Motions
to Dismiss the Complaint filed by Dennis J. Buckley, the Trustee
of the DVI Liquidating Trust (the "Trustee").  The Court will
deny the Motions for the reasons set forth below.


I.    <u>FACTUAL BACKGROUND</u>

DVI, Inc., through its wholly-owned subsidiaries, DVI
Financial Services ("DVI-FS") and DVI Business Services ("DVI-

---

[1]  "The court is not required to state findings or
conclusions when ruling on a motion under Rule 12 . . . ."  Fed.
R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no
findings of fact and conclusions of law pursuant to Rule 7052 of
the Federal Rules of Bankruptcy Procedure.

BC"), was in the business of lending money to medical groups and practitioners (the "Providers"). DVI-FS financed the purchase or lease of diagnostic and other therapeutic medical equipment by the Providers, and DVI-BC provided working capital financing to them. DVI obtained the funds necessary to finance the loans and equipment leases in part through securitization facilities. DVI and its subsidiaries packaged the loans made to Providers and sold them to special purpose entity subsidiaries, which issued notes, secured by the Providers' leases and loans, to raise the funds to buy them. DVI Receivables Corp. XV and DVI Receivables Corp. XV, LLC (collectively "Rec XV") were two of these special purpose subsidiaries.

On August 23, 2003, a voluntary petition under chapter 11 was filed by DVI and its affiliates (collectively "the Debtors"). On November 24, 2004, the Court confirmed the First Amended Joint Plan of Reorganization filed by the Debtors. Pursuant to the confirmed Plan, the Trustee was authorized to pursue litigation claims of the Debtors' estates. On or about January 28, 2008, the Trustee filed an adversary proceeding (the "Complaint") against Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital, Inc. (collectively "Merrill Lynch") and Rec XV. Against Merrill Lynch, the Complaint asserts a claim for breach of fiduciary duties and seeks to avoid and recover alleged preferential and fraudulent transfers. Against Rec XV, the

2

Complaint seeks to avoid and recover alleged fraudulent transfers.

On April 23, 2008, Merrill Lynch filed a Motion to Dismiss the Complaint.  On April 30, 2008, Rec XV filed a Motion to Dismiss the Complaint.  The Trustee opposes both Motions to Dismiss.  The Motions have been fully briefed and are ripe for decision.

II.  <u>JURISDICTION</u>

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(F), (H), (K) & (O) (2006).

III. <u>DISCUSSION</u>

Rec XV moves for dismissal of the claims against it under Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rules 7008, 7009, and 7012(b) of the Federal Rules of Bankruptcy Procedure, respectively.  Rec XV argues that the Complaint fails to state any claim against it for avoidance of any transfers.  It further asserts that to the extent the Court grants Merrill Lynch's Motion, it must also dismiss the Complaint as to Rec XV.

Merrill Lynch also moves for dismissal of the claims against it under Rules 8(a), 9(b), and 12(b)(6).  Specifically, Merrill Lynch argues that the Trustee's Amended Complaint fails to state

a claim for which relief can be granted and fails to plead fraud with particularity.

A.    <u>Standard of Review</u>

1.    <u>Rule 12(b)(6) Dismissal</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).

"In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004). All reasonable inferences are drawn in favor of the plaintiff. <u>Kost</u>, 1 F.3d at 183. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982). <u>See also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000); <u>Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)</u>, 321 B.R. 128, 134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a 'disfavored' practice . . . .").

2.    <u>Rule 8(a) Dismissal</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement must provide the defendant with fair

4

notice of the claim filed against it.  See, e.g., Williams v. Potter, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and conclusory factual allegations do not provide fair notice to a defendant.") (citing United States v. City of Philadelphia, 644 F.2d 187, 204 (3d Cir. 1980)).

"Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n.3 (2007)).

   3.   Rule 9(b) Dismissal

Where a complaint asserts a claim for fraud, the standard for pleading is higher.  The complaint must set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer.  Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 718 (Bankr. D. Del. 2005).  To provide fair notice, the complainant must go beyond merely parroting statutory language.  Id.  See also Burtch v. Dent (In re Circle Y of Yoakum, Texas), 354 B.R. 349, 356 (Bankr. D. Del. 2006).  A bankruptcy trustee, as a third party outsider to the

debtor's transactions, is generally afforded greater liberality in pleading fraud.  <u>Global Link</u>, 327 B.R. at 717.

      B.   <u>Rec XV's Motion to Dismiss</u>

          1.   <u>Failure to State a Claim Against Rec XV</u>

Rec XV contends that the Complaint must be dismissed as to it because it is devoid of any claim against Rec XV sufficient to plead a fraudulent transfer action.  Specifically, Rec XV contends that although it is mentioned in the headings of Counts II through V, there are no allegations in those counts as to it. Rec XV notes that it is mentioned only four other times in the Complaint and asserts that none of those references is sufficient to state a claim against it for a fraudulent transfer.

Specifically, paragraph 48 of the Complaint states that as part of the securitization process, Provider Leases and underlying equipment were transferred from the Debtors to Rec XV to serve as collateral for Merrill Lynch, and paragraph 93 states that the collateral was later transferred from Rec XV.  Rec XV contends that at the most the Trustee is asserting that Rec XV acted as a mere conduit for transfers that ultimately benefitted Merrill Lynch.  As such, Rec XV argues that the Trustee cannot recover those transfers from Rec XV.  <u>Poonja v. Charles Schwab & Co.(In re Dominion Corp.)</u>, 199 B.R. 410, 413 (B.A.P. 9th Cir. 1996) (affirming dismissal of fraudulent transfer action against brokerage firm because "[t]he conduit is merely a facilitator. It does not assert sufficient control over the funds passing

through its hands to be considered a transferee of the transfer .
. . .").

The Trustee asserts that Rec XV's mere conduit argument is
an affirmative defense which cannot form the basis of a motion to
dismiss.  See, e.g., Deckard v. General Motors Corp., 307 F.3d
556, 560 (7th Cir. 2002) (granting a motion to dismiss based on
an affirmative defense is improper because "the existence of a
defense does not undercut the adequacy of the claim").  The
Trustee also notes that the case cited by Rec XV to support its
position was decided in the context of a motion for summary
judgment, not a motion to dismiss.  Poonja, 199 B.R. at 413.

The Court agrees with the Trustee that an affirmative
defense cannot form the basis of a motion to dismiss.  See, e.g.,
Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 242
(3d Cir. 2005) (stating that "affirmative defenses generally will
not form the basis for dismissal under Rule 12(b)(6)."); In re
Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 277 (3d Cir. 2004)
(holding that "an affirmative defense may not be used to dismiss
a plaintiff's complaint under Rule 12(b)(6)."); Miller v. McCown
DeLeeuw & Co. (In re The Brown Schools), 368 B.R. 394, 401
(Bankr. D. Del. 2007) (concluding that "the determination of the
viability of [an affirmative] defense is not proper" at the
motion to dismiss stage).

The "mere conduit" defense is such an affirmative defense.
See, e.g., Astropower Liquidating Trust v. Xantrex Tech., Inc.

7

(In re Astropower, Inc.), 335 B.R. 309, 334 (Bankr. D. Del. 2005) (holding that the "mere conduit" defense involved "questions of fact which are not properly resolved" via a motion to dismiss). As a result, the argument that Rec XV was merely the conduit of the transfer of property of the estate to Merrill Lynch should not be considered in the context of Rec XV's Motion to Dismiss.

Further, the Court finds that the Complaint does state a cause of action against Rec XV. The Complaint alleges that the Provider Leases transferred to Rec XV were part of the $43 Million Transfer. (Cm. ¶ 106.) The Complaint further contends that the $43 Million Transfer was a fraudulent transfer "made with the actual intent to hinder, delay or defraud creditors" and that the Debtors "received less than a reasonably equivalent value in exchange for the $43 Million Transfer" at a time when the Debtors were insolvent, engaged in business with unreasonably small assets, intended to or believed it would incur debts it was unable to pay, and had actual creditors who could avoid the transfers under state law. (Cm. ¶¶ 139, 140, 150, 151, 165, 166, 167, 170, 171, 173.) The Court finds that these allegations are sufficient to state a cause of action against Rec XV.

        2.    Joinder in Merrill Lynch's Motion to Dismiss

Rec XV also contends that to the extent Merrill Lynch's Motion to Dismiss is granted, it must be granted as to it as well. The Court will therefore consider the two together.

C.    <u>Merrill Lynch's Motion to Dismiss</u>

Merrill Lynch argues that the Supreme Court recently changed the standard for consideration of motions to dismiss, disavowing its decision in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), in which the Supreme Court had stated that a motion to dismiss must be denied unless the plaintiff can prove no set of facts that would entitle it to relief.  <u>Twombly</u>, 127 S.Ct. at 1965.  Merrill Lynch argues that, instead, the Supreme Court's decision in <u>Twombly</u> created two new concepts in considering Rule 12(b)(6) motions to dismiss: (1) the plaintiff must state the factual grounds for his claim rather than simply recite the elements of the cause of action, and (2) the factual allegations must be plausible and above a speculative level.  <u>Twombly</u>, 127 S.Ct. at 1974; <u>Phillips</u>, 515 F.3d at 231-32.

The Trustee disagrees with Merrill Lynch's argument, noting that the Supreme Court in <u>Twombly</u> reiterated the concept that federal pleading is notice pleading by noting that Rule 8(a)(2) requires only a short and plain statement of the claim showing the plaintiff is entitled to relief.  <u>Twombly</u>, 127 S.Ct. at 1964 (<u>citing</u> <u>Conley</u>, 355 U.S. at 47).  The Supreme Court stated that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" and "a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."  <u>Id.</u> at 1964-65.  The

9

Trustee contends that its 54-page Complaint gives sufficient detail to withstand the Defendants' Motions to Dismiss.

The Court concludes that <u>Twombly</u> requires that a complaint contain more than just conclusory reiterations of the statutory basis for a claim.  The plaintiff must put some "meat on the bones" by presenting sufficient factual allegations to explain the basis for its claim.  In applying that test here, the Court finds that the Complaint is sufficient to state claims against both Merrill Lynch and Rec XV.  Accordingly, the Motions to Dismiss will be denied.

   1. <u>Preference Count Against Merrill Lynch</u>

     a. <u>Failure to Identify Specific Transfers</u>

Merrill Lynch contends that the preference count against it should be dismissed because the Trustee fails to identify the allegedly preferential transfers with sufficient detail.  <u>See, e.g.</u>, <u>Pardo v. Gonzaba (In re APF Co.)</u>, 308 B.R. 183, 188-89 (Bankr. D. Del. 2004) (concluding that preference complaint must identify each transfer by date, amount, name of transferor, and name of transferee); <u>TWA, Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA, Inc. Post Confirmation Estate)</u>, 305 B.R. 228, 232 (Bankr. D. Del. 2004) (same).

The Trustee argues that it is not necessary to include the name, date, and amount of the transfer to state a claim for avoidance of a preference.  <u>See, e.g.</u>, <u>Official Comm. of Unsecured Creditors v. Brandywine Apartments (In re IT Group,</u>

Inc.), 313 B.R. 370, 373 (Bankr. D. Del. 2004) (following cases which hold that preference complaints do not have heightened pleading requirements); <u>Neilson v. Southern (In re Webvan Group, Inc.)</u>, No. 03-54375, 2004 WL 483580, *2 (Bankr. D. Del. Mar. 9, 2004) (declining to follow cases which have required that preference complaints include such detail because federal rules require only notice pleading).

The Court finds that the cases cited by the Trustee are distinguishable. The <u>IT Group</u> case involved only one transfer which was in fact identified in the complaint by date, amount, and number of the payment. 313 B.R. at 374. The <u>Webvan</u> case relied on <u>Conley</u> (before the <u>Twombly</u> decision was rendered) and, therefore, does not state the correct standard to be applied. 2004 WL 483580, *2. Therefore, ordinarily the Court will require that the transfers be identified with some particularity to give the defendant sufficient notice of what transfer is sought to be avoided.

b.   <u>Improvement in Position Claim</u>

The Trustee contends, however, that this case is different from the usual preference action. His claim is premised on the assertion that the transfers to Merrill Lynch caused an improvement in its position (by being repaid in full during the preference period when its claim was not fully secured). To state such a claim under section 547(c)(5) of the Bankruptcy Code, the Trustee contends that he need only assert the aggregate

11

of the transfers, which he has done in paragraphs 107 and 130 of the Complaint.

Merrill Lynch replies that section 547(c)(5) is an affirmative defense, not the basis for a claim.  Further, Merrill Lynch asserts that it does not eliminate the need to identify each transfer that the Trustee asserts is preferential.

The Court rejects Merrill Lynch's argument.  While section 547(c) recites several defenses to a preference action, subsection 547(c)(5) contains an exception to the defense.  It reads in part:

> (c)  The trustee may not avoid under this section a transfer -
> (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, <u>except to the extent that the aggregate of all such transfers to the transferee caused a reduction</u>, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of -
> (A)(i) . . . 90 days before the date of the filing of the petition
> . . . .

11 U.S.C. § 547(c)(5) (2006) (emphasis added).

The Trustee argues that this test requires the Court to consider "the aggregate of all such transfers," compare the value of Merrill Lynch's collateral and its secured claim 90 days before the petition and on the petition date, and determine

whether Merrill Lynch's position improved between those two
dates.

The Court agrees with the Trustee's analysis.  As the
Seventh Circuit explained:

> The first step in applying section 547(c)(5) is to
> determine the amount of the loan outstanding 90 days
> prior to the filing and the "value" of the collateral
> on that day.  The difference between these figures is
> then computed.  Next, the same determinations are made
> as of the date of filing the petition.  A comparison is
> made, and if there is a reduction during the 90 day
> period of the amount by which the initially existing
> debt exceeds the security, then a preference for
> section 547(c)(5) purposes exists.  The effect of
> 547(c)(5) is to make the security interest voidable to
> the extent of the preference.

Samson v. Alton Banking & Trust Co. (In re Ebbler Furniture and
Appliances, Inc.), 804 F.2d 87, 89-90 (7th Cir. 1986) (internal
citation omitted).  See also Century Glove, Inc. v. Iselin (In re
Century Glove, Inc.,), 151 B.R. 327, 340 (Bankr. D. Del. 1993)
(adopting Ebbler test).

Therefore, the Court concludes that it is not necessary for
the Trustee to allege (or prove) each and every transfer to
Merrill Lynch that occurred during the 90-day preference period.
Rather, the Trustee need only allege the aggregate effect of
those transfers.  The Court concludes that the Trustee has done
so in his Complaint.

c.   Fully Secured

Merrill Lynch contends nonetheless that the Trustee still
fails to state a viable preference count against it because

13

Merrill Lynch was always fully secured.  <u>Ebbler</u>, 804 F.2d at 90 ("Of course, if the creditor is fully secured 90 days before the filing of the petition, then that creditor will never be subject to a preference attack.")  Merrill Lynch contends that the security interest Fleet had on the collateral was released in favor of Merrill Lynch and the collateral was not over-valued.

The Trustee disputes these facts, however, contending that (1) the Fleet release had a condition that was not met, and (2) the collateral had less value than Merrill Lynch's claim because of actions taken by the Debtors in violation of the parties' agreements.

The Court finds that the Trustee has adequately pled his claim in the Complaint.  The Trustee alleges in the Complaint that Merrill Lynch was not fully secured by the collateral.  (Cm. ¶¶ 77-97, 131-32.)  This is based on the Trustee's allegations that Fleet had not released its prior security interest in the collateral.  (Cm. ¶¶ 78-79, 85.)  Further, the Trustee alleges that the collateral did not have the value Merrill Lynch asserts because the Debtors rewrote some loans that were in default and failed to pay the equipment vendors on other loans.  (Cm. ¶¶ 87-88.)  The Court concludes that these allegations are sufficient to support the Trustee's claim under section 547(c)(5) of the Bankruptcy Code.

d.   <u>Effect of Releases</u>

Merrill Lynch argues, however, that the issue of the release of liens by Fleet is an inter-creditor issue that cannot be raised by the Trustee but only by Fleet.  <u>See, e.g.</u>, <u>Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, LP)</u>, 171 F.3d 249, 254 (5th Cir. 1999).

The Trustee contends that the <u>Krafsur</u> case is distinguishable.  The Trustee argues that his allegation that Merrill Lynch was under-secured must be accepted as true for purposes of the Motion to Dismiss.

The Court agrees with the Trustee.  <u>Krafsur</u> involved an inter-creditor agreement whereby the first secured creditor agreed to subordinate its position in part to another secured creditor.  171 F.3d at 257.  In that case, the Fifth Circuit held that the debtor could not raise the effects of the inter-creditor agreement in its preference action because that agreement specifically stated that it was not intended for the benefit of the debtor.  <u>Id.</u> at 258.  This case is different.  It involves the effects of a conditional release of a lien of one secured creditor in favor of another.  Contrary to the argument of Merrill Lynch, <u>Krafsur</u> does not stand for the broad proposition that a trustee cannot raise the effect of a conditional release of a lien in asserting that a creditor was not fully secured.

15

e.   <u>Ordinary Course of Business</u>

Merrill Lynch also contends that the preference count should be dismissed because the transfers were made in the ordinary course of business according to ordinary business terms.  The Trustee responds that this is an affirmative defense and, therefore, is not a proper basis for a motion to dismiss.

The Court agrees with the Trustee.  The ordinary course of business defense is an affirmative defense, which is not a proper basis for a motion to dismiss.  <u>See, e.g.</u>, <u>Adelphia Commc'ns Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns Corp.)</u>, 365 B.R. 24, 79 (Bankr. S.D.N.Y. 2007) (concluding that ordinary course of business defense raises factual issues that are inappropriate for determination on a motion to dismiss under Rule 12(b)(6)).

For the foregoing reasons, the Court will deny Merrill Lynch's Motion to Dismiss the preference count.

2.   <u>Fraudulent Transfer Counts Against All Defendants</u>

a.   <u>Counts Based on Actual Fraud</u>

Merrill Lynch contends that the counts of the complaint based on actual fraud must be dismissed for failure to state fraud with particularity.  Specifically, Merrill Lynch alleges that to state a claim based on actual fraud, the Trustee must state the date and amount of each fraudulent transfer, the value on the transfer date, and the consideration received for such transfer.  <u>See, e.g.</u>, <u>Giuliano v. U.S. Nursing Corp. (In re</u>

16

<u>Lexington Healthcare Group, Inc.)</u>, 339 B.R. 570, 574–75 (Bankr.
D. Del. 2006) (granting motion to dismiss fraudulent transfer
claim because the plaintiff did not identify the date and amount
of the transfers).

The Trustee contends that Rule 9(b) does not require the
level of specificity that Merrill Lynch contends.  Rule 9(b)
states: "In alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or mistake.
Malice, intent, knowledge, and other conditions of a person's
mind may be alleged generally."  Fed. R. Civ. P. 9(b),
incorporated by Fed. R. Bankr. P. 7009.  Notably, the Trustee
asserts that Rule 9(b) says nothing about the necessity to plead
date, time, or amount of transfer.  Nonetheless, the Trustee
argues that he has pled such details in the Complaint and fully
apprised the Defendants of the details of the alleged fraud
committed by them.

### i.   <u>$43 Million Transfer</u>

With respect to the $43 Million Transfer, Merrill Lynch
admits that the Trustee alleges the transfer of $43 million in
face amount of Provider Leases and that the Trustee alleges that
no consideration was given for that transfer.  Merrill Lynch
argues, however, that the Trustee fails to allege what the actual
value of the transfer was as opposed to its face value.  In
addition, Merrill Lynch disputes the Trustee's allegation that
the transfer was for no consideration.

17

The Trustee responds that it has given sufficient detail regarding the $43 Million Transfer including the date, the circumstances surrounding the transfer, and the lack of consideration.  He contends that nothing more is necessary to apprise Merrill Lynch of the substance of this claim.

The Court agrees with the Trustee.  All that is required (even of a claim for fraud) is sufficient detail to apprise the defendant of the claim against it.  The Third Circuit has explained the purpose of the particularity requirements of Rule 9(b) as follows:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

Seville Indus. Mach. Corp. v. Southernmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

In this case, the Trustee has identified the transfer by date and face amount and has alleged that it was for no consideration.  Further, the Trustee has explained in detail the circumstances surrounding that transfer.  (Cm. ¶¶ 100-106.) While there may be some dispute as to the actual value of the transfer or the consideration given for it, the Court need not decide those issues at this stage.  The Court finds that the

18

Trustee has alleged sufficient facts to put the Defendants on notice of the substance of its fraud claim as to the $43 Million Transfer.

### ii.  $11.5 Million Holdback

With respect to the $11.5 million holdback, Merrill Lynch contends that the Trustee does not even allege a transfer but instead alleges that Merrill Lynch failed to advance those funds to the Debtors.

The Trustee disagrees.  He asserts that the Complaint does identify the date, the amount, and the deficiency of the transaction relating to the holdback.

The Court finds that the Complaint adequately identifies the date, amount, and circumstances surrounding the initial promise to advance $58 million and subsequent unilateral decision to fund $11.5 million less.  (Cm ¶¶ 3, 5, 120.)  The Court finds that the allegations in the Complaint with respect to the holdback are sufficient to state a claim for fraud.

### iii. Cherrypicking and Loan Pay-off

Merrill Lynch asserts that with respect to the cherry-picking of collateral argument, the Trustee merely alleges that there were a series of repayments and advances without specifically identifying any of them.  With respect to the pay-off of the loan to the Debtors, Merrill Lynch complains that the Trustee does not identify any of the payments made that comprise the entire pay-off.  The failure to identify any of the specific

19

transfers alleged to be fraudulent, Merrill Lynch contends, is insufficient to meet the particularity requirements of Rule 9(b).

The Trustee responds that, like the preference claim, his assertion is not that each individual transfer was fraudulent but that the totality of the transfers constituted a fraud on the Debtors and their creditors because they resulted in Merrill Lynch enhancing its position by (1) having the Debtors pay its secured claim in full and (2) replacing the Debtor's collateral with collateral owned by non-debtor entities, thereby improving its chances of getting paid.

The Court agrees with the Trustee that the Complaint adequately advises Merrill Lynch of the gravamen of his claim. The Trustee alleges that Merrill Lynch used its position with the Debtors to maximize its recovery by engineering a series of transfers that resulted in the pay off of the Debtors' obligation to it, the transfer of valuable collateral from the Debtors to non-debtors, and the creation of off-balance sheet debt owed by non-debtors to replace Merrill Lynch's claim against the Debtors. (Cm. ¶¶ 3, 31, 93, 95, 98, 125.)  The Court concludes that these allegations are sufficient to support a claim of fraud.

### iv.  Intent to Defraud

With respect to all of the allegedly fraudulent transfers, Merrill Lynch argues that the Trustee fails to state that the transfers were made by the Debtors with the requisite intent to

hinder, delay or defraud creditors.  The Trustee responds that it did allege such intent.

The Court agrees with the Trustee.  Paragraphs 139, 141, 143, 145, 165 all allege that the various transfers were "made with the actual intent to hinder, delay or defraud the creditors of DVI" while the Debtors were insolvent.  That is all that is required by section 548(a)(1)(A) of the Bankruptcy Code.  See, e.g., Brandt v. Trivest II, Inc. (In re Plassein Int'l Corp.), 352 B.R. 36, 40-41 (Bankr. D. Del. 2006) (concluding that Rule 9's heightened pleading requirements are not applicable to fraudulent transfer claims under the Bankruptcy Code or state law and that simple factual allegation of transfer while debtor was insolvent is sufficient).  See also Fed. R. Civ. P. 9(b), incorporated by Fed. R. Bankr. P. 7009 ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

b.    Constructively Fraudulent Transfers

Merrill Lynch also argues that the Trustee has failed to adequately plead that the transfers are constructively fraudulent.  In addition to the above arguments, Merrill Lynch asserts that the Trustee's claim must fail because although the Trustee does allege otherwise, the transfers were for reasonably equivalent value.  For example, Merrill Lynch contends that in exchange for the $43 Million Transfer, it advanced almost $8 million in new funds to the Debtors and extended the term of the

21

loan agreement.  In exchange for the pay-off of the loan, Merrill
Lynch asserts that the Debtors got a release of that obligation.
In connection with the cherrypicking allegation, Merrill Lynch
notes that the Trustee admits that there were further advances by
Merrill Lynch to the Debtors.

The Trustee responds that the question of whether the value
given by Merrill Lynch to the Debtors was reasonably equivalent
is in dispute and not appropriate for determination on a motion
to dismiss.

The Court agrees with the Trustee.  All that is needed at
this stage is an allegation that there was a transfer for less
than reasonably equivalent value at a time when the Debtors were
insolvent.  This the Trustee has done in his Complaint.  (Cm. ¶¶
149-162.)  See, e.g., Astropower Liquidating Trust v. Xantrex
Tech., Inc. (In re Astropower Liquidating Trust), 335 B.R. 309,
333 (Bankr. D. Del. 2005) (holding that constructive fraud count
need not comply with Rule 9's heightened pleading standard);
Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link
Telecom Corp.), 327 B.R. 711, 717-18 (Bankr. D. Del. 2005)
(concluding that greater liberality is given to a trustee in
pleading fraudulent conveyance claim because trustee is often a
third party outsider to the transfer and because fraudulent
conveyance is often not based on actual fraud but is presumed
fraudulent if made without fair consideration while the debtor
was insolvent).

3.    <u>Breach of Fiduciary Duty Against Merrill Lynch</u>

a.    <u>Duty</u>

Merrill Lynch argues that the claim for breach of fiduciary duty against it should be dismissed because it had only underwriting, lending, and other business relationships with the Debtors, not any fiduciary duty.  <u>See, e.g.</u>, <u>Coast Auto. Group, Ltd. v. VW Credit, Inc.</u>, 34 F. Appx. 818, 827 (3d Cir. 2002) (concluding that generally lenders are not fiduciaries to their borrowers); <u>Weinberger v. Kendrick</u>, 698 F.2d 61, 78-79 (2d Cir. 1982) (finding that lenders typically do not owe fiduciary duties to borrowers because they have adverse interests); <u>Paradise Hotel Corp. v. Bank of Nova Scotia</u>, 842 F.2d 47, 53 (3d Cir. 1988) (stating that "[c]reditor-debtor relationships such as that between the Bank and Paradise rarely are found to give rise to a fiduciary duty."); <u>HF Mgmt. Servs., LLC v. Pistone</u>, 818 N.Y.S.2d 40, 42 (N.Y. App. Div. 2006) (noting that underwriters typically do not have fiduciary duties to issuers of the securities). Further, Merrill Lynch contends that the underwriting relationship it had was with non-debtor subsidiaries, not the Debtors.

The Trustee responds that he has alleged a diverse and multi-faceted relationship between the Debtors and Merrill Lynch which, he contends, gave rise to a fiduciary relationship.  <u>See, e.g.</u>, <u>EBC I, Inc. v. Goldman Sachs & Co.</u>, 832 N.E.2d 26, 31 (N.Y. 2005) (finding fiduciary duty arose in relationship between an

underwriter and issuer because the parties' conduct "created a
relationship of higher trust than would arise from" a normal
underwriting agreement); <u>OHC Liquidation Trust v. Credit Suisse
First Boston (In re Oakwood Homes Corp.)</u>, 340 B.R. 510, 519
(Bankr. D. Del. 2006) (denying motion to dismiss breach of
fiduciary duty claim where plaintiff alleged a "multifaceted
relationship [which] placed the defendants in a position of
higher trust").

The Court finds that the Trustee has alleged sufficient
additional facts to support his contention that there was a
fiduciary relationship between the Debtors and Merrill Lynch
beyond merely an underwriting and lending arrangement.  (Cm. ¶¶
2, 15, 32-68.)

> b.   <u>Breach of Duty</u>

Merrill Lynch contends, however, that there is no allegation
that it breached any specific fiduciary duty.  The Trustee
disagrees, contending that it identified numerous such breaches
in the Complaint.  (Cm. ¶¶ 3, 31, 49, 51, 98.)

The Court agrees with the Trustee.  The Complaint does
contain sufficient allegations that Merrill Lynch breached a
fiduciary duty to the Debtors.  For example, the Trustee alleges
in the Complaint that "Merrill Lynch abused its trusted position
with DVI in order to maximize the recovery on Merrill Lynch's own
claims at the expense of DVI and DVI's other creditors."  (Cm. ¶
3.)  The Trustee further asserts that "Merrill Lynch engineered

24

and required DVI to make a series of transfers that were designed to improve the position of Merrill Lynch at the expense, and to the detriment, of DVI and its other creditors." (Cm. ¶ 31.) These allegations, together with the detailed allegations in the Complaint concerning the specific steps taken by Merrill Lynch to improve its position at the expense of the other creditors, are sufficient to state a breach of fiduciary duty claim against Merrill Lynch.

c.    In Pari Delicto

Finally, Merrill Lynch contends that the Trustee's breach of fiduciary duty claim is barred by the in pari delicto doctrine because the wrongdoing, if any, was committed by the Debtors (the predecessors to the Trustee). See, e.g., Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356-57 (3d Cir. 2001) (holding that a plaintiff may not bring a claim against a defendant if the plaintiff bears fault for that claim); American Trade Partners, L.P. v. A-1 Int'l Importing Enters., Ltd., 770 F. Supp. 273, 276 (E.D. Pa. 1991) (stating that in pari delicto is an equitable defense that prevents a plaintiff from profiting from its own wrongdoing).

The Trustee replies that this doctrine is a defense that cannot form the basis of a motion to dismiss. The Trustee also argues that the in pari delicto doctrine is subject to an exception if the wrongful actions of the Debtors' officers were adverse to the corporation. See, e.g., Lafferty, 267 F.3d at

25

358-59.  The Trustee also argues that the doctrine does not apply to third party claims of creditors.  See, e.g., Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  Additionally, the Trustee asserts that the doctrine does not bar a claim against Merrill Lynch if its fraud was separate from the fraud of the officers of the Debtors.  See, e.g., Bankruptcy Servs., Inc. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432, 449 (2d Cir. 2008) (finding bankruptcy court's conclusion that "adverse interest" exception permitted prosecution of action by company representative where fraud was committed by management which acted totally for its own benefit was not clearly erroneous).  The Trustee contends that the facts relevant to the doctrine and its exceptions are in dispute and not appropriately decided at this stage.

The Court agrees with the Trustee that the Court need not address the in pari delicto doctrine or its exceptions at this stage of the proceedings.  An affirmative defense with disputed facts is not a proper basis to dismiss a complaint.  See, e.g., Adams Golf, 381 F.3d at 277 (affirmative defense may not be used to dismiss a complaint under Rule 12(b)(6)); Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.), 299 B.R. 732, 752 (Bankr. D. Del. 2003) (concluding that "[i]n pari delicto is an affirmative defense.  A plaintiff is not required to plead in the complaint all requirements for a claim as well as to contemplate and plead in

anticipation of all affirmative defenses that may lie against such claim.") (internal citation omitted).

Consequently, the Court concludes that the Trustee has properly pled a claim for breach of fiduciary duty and the motion to dismiss this claim will be denied.


IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court will deny the Motions to Dismiss the instant adversary proceeding.

An appropriate order is attached.


Dated: September 16, 2008          BY THE COURT:


                                   Mary F. Walrath
                                   United States Bankruptcy Judge